UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

    Plaintiff,                                      Case No. 3:22-cr-124-2

vs.

DANIELLE N. COLLINS,                District Judge Michael J. Newman

    Defendant.

**ORDER: (1) DENYING DEFENDANT DANIELLE COLLINS'S ("DEFENDANT") MOTION FOR A SIXTEEN-YEAR EXTENSION OF HER REPORT/SURRENDER DATE TO THE UNITED STATES BUREAU OF PRISONS (Doc. No. 160); AND (2) REQUIRING DEFENDANT TO REPORT AS DESIGNATED BY THE BOP BEFORE 2:00 P.M. ON NOVEMBER 17, 2024**

On April 15, 2024, the Court accepted Defendant's plea agreement, which the parties reached pursuant to Fed. R. Crim. P. 11(c)(1)(C), and found Defendant guilty of conspiracy to commit supplemental nutrition assistance (SNAP) fraud and maintaining a drug-involved premises. Doc. No. 126 at PageID 659. After sentencing her to a total of 18 months in prison as specified in the agreement, the Court allowed Defendant to voluntarily surrender to the Bureau of Prisons ("BOP") and did not Order her into custody at her sentencing hearing.[1]

This case is back before the Court on Defendant's motion, through counsel, for an extension of her report/surrender date. Doc. No. 160. In the motion, she seeks to extend the date she must surrender to the BOP by 16 years—to September 29, 2040 (30 days after Defendant's youngest child's 18th birthday). *Id*. at PageID 914. If Defendant's surrender date is extended to this date, the presumed

---

[1] Defendant was originally arrested on or around August 11, 2022 and given an initial appearance. The assigned Magistrate Judge ordered Defendant released on bond with home detention and other conditions.

impact would be, in effect, to allow Defendant to maintain custody of her minor children before beginning to serve her 18-month sentence.[2]

On May 10, 2024, this Court held a telephone conference on the record concerning Defendant's pending motion. During the conference, attorney Thomas Eagle represented Defendant and Assistant United States Attorney ("AUSA") Dwight Keller represented the Government. Attorney Eagle summarized the basis for Defendant's motion and indicated that he had conferred with AUSA Keller about extending Defendant's surrender date. AUSA Keller explained that he does not object to the proposed surrender date.

I.

Defendant contends that the only criteria applicable to her motion appears in 18 U.S.C. § 3143(a)(1). Doc. No. 160 at PageID 915. She argues that her motion "is consistent with and not prohibited by any legal or procedural concern, the only criteria being that 'the person is not likely to flee or pose a danger to the safety of any other person or the community,' and there being no statutory maximum for the time for voluntary surrender." Doc. No. 160 at PageID 915 (quoting 18 U.S.C. § 3143(a)(1)).

Section 3143(a)(1) creates a presumption of detention for a convicted offender awaiting execution of his or her sentence "unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released…."

There is a problem, addressed below, *infra*, § II, with Defendant's reliance on § 3143(a)(1). For now, assuming *arguendo* that § 3143(a)(1) applies to Defendant's present circumstances, she has not shown by clear and convincing evidence that she "is not likely to flee or pose a danger to the

---

[2] Defendant is involved in child-custody proceedings the Montgomery County Juvenile Court concerning her children. The Juvenile Court has apparently declined to make a final determination regarding the custody of her children until this Court imposes Defendant's sentence. *See, e.g.,* Doc. No. 147, PageID 889.

2

safety of any other person or the community…," § 3143(a)(1), if her voluntary surrender is extended for approximately sixteen years. Defendant minimizes the life-threatening danger she posed to the community by maintaining a drug-involved premises.³ She admitted in the plea agreement that she maintained a drug-involved premises "for the express purpose of distributing, packaging and using 'distribution quantities' of certain controlled substances … include[ing]: Fentanyl…" and other controlled substances. Doc. No. 92 at PageID 455. The danger Fentanyl poses to the members of any community in which it is illegally distributed is difficult to overstate. The United States Center for Disease Control explains,

> Fentanyl is a synthetic opioid that is up to 50 times stronger than heroin and 100 times stronger than morphine. It is a major contributor to fatal and nonfatal overdoses in the U.S.…
>
> Fentanyl and other synthetic opioids are the most common drugs involved in overdose deaths. Even in small doses, it can be deadly. **Over 150 people die every day from overdoses related to synthetic opioids like fentanyl.**

https://www.cdc.gov/stopoverdose/fentanyl/index.html (emphasis in original; footnotes omitted).

Although Defendant has not violated the conditions of her bond and has made positive steps in her life since her release on bond, the steps she has taken—such as obtaining and maintaining employment—must be considered in light of the life-threatening danger she created by maintaining a drug-involved premises for the express purpose of distributing Fentanyl and other controlled substances. Rather than showing by clear and convincing evidence that she is not likely to pose a danger to her community, her post-bond conduct does not nullify the life-threating danger she posed to members of her community by maintaining a drug-involved premises and does not overcome the presumption of detention applicable to her under § 3143(a)(1). *See United States v. Foster*, No. 23-cr-20464, 2024 WL 987565, at *2 (E.D. Mich. Mar. 7, 2024) ("Release [under § 3143(a)(1)] is no

---

³ Defendant was also indicted for conspiracy to possess with intent to distribute Fentanyl and maintaining a second drug-involved premises. Doc. No. 29 at PageID 200-01; *see* Doc. No. 126 at PageID 663.

3

longer favored once guilt of a crime has been established"). In addition, the deceptive nature of her other admitted crime—conspiracy to commit SNAP fraud—and her extensive involvement in that conspiracy, *see* Doc. No. 92 at PageID 454, weighs against her effort to show by clear and convincing evidence that she will not likely pose a danger to her community in the coming sixteen years.

## II.

Even if Defendant could overcome the presumption of detention imposed under § 3143(a)(1), she errs in asserting that § 3143(a)(1) contains "the only criteria" applicable to her present circumstances. Doc. No. 160 at PageID 915. Section 3143(a)(1) contains an exception for an offender that falls under § 3143(a)(2).[4] Defendant is such an offender.

Section 3143(a)(2) applies to an offender (awaiting execution of her sentence) who has been found guilty of "an offense for which a maximum term of imprisonment of ten years or more is prescribed under the Controlled Substances Act, (21 U.S.C. § 801, et seq.)." 18 U.S.C. § 3142(f)(1)(C).[5] Defendant's admitted crime of maintaining a drug-involved premises is prescribed under the Controlled Substances Act, *see* 21 U.S.C. § 856(a)(1), and is an offense with a maximum sentence of twenty years. *See* 21 U.S.C. §§ 856(a)(1), (b).

Not surprisingly, because Defendant is such an offender, she must do much to overcome the presumption of detention: Not only must she show by clear and convincing evidence that she is not likely to flee or pose a danger to the safety of any other person or the community, *see* § 3143(a)(2)(B), she must also show either "(i) there is a substantial likelihood that a motion for acquittal or new trial

---

[4] Section 3143(a)(1)'s exception appears in its first clause, "Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence…, be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community …." *Id.* (emphasis added).

[5] The relevant language of § 3143(a)(2) provides, "The judicial officer shall order that a person who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 and is awaiting imposition or execution of sentence be detained…."

4

will be granted; or (ii) an attorney for the Government has recommended that no sentence of imprisonment be imposed….." 18 U.S.C. § 3143(a)(2)(A).  Assuming *arguendo* that Defendant could show she was not likely to flee or pose a danger to the safety of any other person or the community, she falls short of showing either remaining criterion in § 3143(a)(2)(A).  Given her guilty plea, there is no indication in the record that she will seek or obtain an acquittal or trial.  Moreover, the Government agreed in Defendant's Rule 11(c)(1)(C) plea agreement to an 18-month sentence instead of recommending no sentence.  Doc. No. 92 at PageID 450.

### III.

This Court lastly considers whether Defendant has presented "exceptional reasons" to support her motion for extension of her surrender date.  *See* 18 U.S.C. § 1345(c); *cf. United States v. Christman*, 596 F.3d 870, 871 (6th Cir. 2010) ("the district court erred in not considering whether Christman established exceptional reasons to support his release pending sentencing").  "Exceptional reasons exist where there is 'a unique combination of circumstances giving rise to situations that are out of the ordinary.'" *United States v. Walden*, No. 3:10–CR–110–7, 2011 WL 4476641, at *1 (E.D. Tenn. Sept. 26, 2011) (citations omitted).

Defendant has not presented exceptional circumstances sufficient to warrant a sixteen-year delay in reporting to the BOP.  The fact that she will be separated from her children while incarcerated is not an unusual or exceptional situation for a parent who has been convicted of a federal felony.  *Cf. Walden*, 2011 WL 4476641, at *3 ("[the defendant's] separation from his children, his financial troubles, and his potential problems with obtaining financial aid for college are unfortunate, these circumstances are not unusual or exceptional consequences of a term of incarceration").  The more serious fact that she might lose custody of her children, even if it is considered likely, is not something that has occurred at present as a result of her conviction and is not an outcome that can be predicted with certainty.  Further, this Court has provided Defendant with multiple opportunities to withdraw

5

her plea agreement. On each opportunity she declined. This is understandable for two main reasons: first, the serious nature of the charges pending against her—which included conspiracy to commit SNAP fraud; conspiracy to possess with intent to distribute Fentanyl, Etizolam, Hydrocodone, and Oxycodone; maintaining two drug-involved premises; and aggravated identity theft; and second, the relatively brief sentence she received pursuant to the terms of her Rule 11(c)(1)(C) plea agreement. The Court is certainly sensitive to her desire, and the positive steps she has taken, to maintain custody of her children. The Court is also well aware that this might not be possible given the ongoing child-custody proceedings in the Montgomery County Juvenile Court. Federal courts, however, lack jurisdiction and the administrative infrastructure necessary to adjudicate child-custody cases. Additionally, the federal courts lack the same high level of expertise in juvenile or family law that judges and lawyers in state juvenile and family courts possess. *Cf. Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992) ("As a matter of judicial economy, state courts are more eminently suited to work of this type [issuance of divorce, alimony, and child-custody decrees] than are federal courts…."); *cf. also Adoptive Couple v. Baby Girl*, 570 U.S. 637, 656 (2013) ("Adoption proceedings are adjudicated in state family courts across the country every day, and 'domestic relations' is 'an area that has long been regarded as a virtually exclusive province of the States'" (citation omitted)); *In re Burrus*, 136 U.S. 586, 593-94 (1890) ("The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States").

Prior to Defendant's sentencing hearing, the Court wrestled extensively with the potential impact a term of imprisonment may have on Defendant's custody of her children. Doing so, the Court carefully considered the entire case record and all Defendant's circumstances described therein—including, but not limited to, Defendant's plea agreement in which she knowingly, intelligently, and voluntarily agreed to an 18-month term of imprisonment followed by a 3-year term of supervised release. Doc. No. 92 at PageID 450. She doubtlessly did so, in part, because she faced a sentence in

the range of 46 to 57 months recommended by the United States Sentencing Guidelines and the possible statutory maximum sentences of 5 years on Count 1 and 20 years on Count 7 of the Indictment. *Id*. at 449. Defendant's present motion does not present exceptional reasons to permit her proposed sixteen-year delay in reporting to the BOP. *Cf. United States v. Oakes*, No. 1:19-cr-93, 2020 WL 7046885, at *2 (S.D. Ohio Dec. 1, 2020) (granting approximately four-month extension of self-surrender date for medical reasons, including "overwhelming public interest in preventing the continued spread of COVID-19"); *United States v. Medas*, No. 1:20-cr-255, 2024 WL 2080999, at *1 (N.D. Ohio May 9, 2024) (granting a total of approximately one-year extension of the defendant's self-surrender date due to his treatment for prostate cancer by private physicians); *United States v. Lewis*, No. 3:99-cr-00033, 2022 WL 9496025, at *1 (M.D. Tenn., Oct. 13, 2022) (denying motion for 30-day extension of self-surrender date).

### IV.

For the above reasons, Defendant's motion for a sixteen-year extension of her report/surrender date is **DENIED**. In the interest of justice, the Court **EXTENDS** Defendant's date for reporting to the BOP by six months. Defendant must **REPORT** as designated by the BOP by 2:00 p.m. on November 17, 2024.

**IT IS SO ORDERED.**

May 17, 2024  s/*Michael J. Newman*
 Hon. Michael J. Newman
 United States District Judge